OPINION
{¶ 1} Appellant, David M. Neubauer, appeals from a judgment of the Franklin County Municipal Court, which dismissed his complaint against appellee, Ohio Remcon, Inc., and imposed sanctions upon appellant for payment of appellee's attorney fees in the amount of $3,005.50 and costs of $118. Appellant appeals only from the order of sanctions and costs, and does not appeal the dismissal of the complaint. For the following reasons, we affirm the court's order.
 {¶ 2} On April 27, 2004, appellant, a member of the bar appearing pro se, filed a complaint against appellee in the small claims division of the Franklin County Municipal Court. The complaint alleged that, on or about March 15, 2004, on appellant's motion, an order of garnishment upon the earnings of Jeffrey P. Pargeon had been issued to appellee. The complaint further alleged that appellee had "failed to correctly answer" the garnishment order and had not paid $313.20 owed pursuant to the order. The complaint sought judgment against appellee in the amount of $313.20, plus interest and court costs.
 {¶ 3} On May 19, 2004, appellee filed an answer and counterclaim. For its answer, appellee asserted that a proper order of garnishment had never been served upon appellee "since [appellant] did not, and does not have any judgment in Case No. 97CVG-37542 against Jeffrey P. Pargeon." Appellee also asserted that the order of garnishment was issued as a result of appellant's false affidavit, which claimed that appellant had a March 1998 judgment against Pargeon. The March judgment, appellee asserted, was against Debra Pargeon, not Jeffrey Pargeon.
 {¶ 4} In its counterclaim, appellee alleged the details of appellant's underlying action against Debra and Jeffrey Pargeon, as follows. In 1997, appellant, acting pro se, filed a complaint in the Franklin County Municipal Court, case No. 97CVG-37542, against Debra Pargeon, Jeffrey Pargeon, and Glynda Bowles for restitution and damages arising from a lease agreement. Appellant thereafter filed a motion for default judgment solely against Debra Pargeon. On March 13, 1998, the municipal court granted judgment in favor of appellant and against "Debra Pargeon, only, in the sum of $6749.32" plus interest and costs. In that same case, on March 9, 2004, appellant filed a sworn affidavit to issue an order and notice of garnishment other than personal earnings upon appellee. Appellant identified Jeffrey Pargeon as the judgment debtor, the date of judgment as March 13, 1998, and the probable amount due as $10,837.88.
 {¶ 5} Based on these facts, for its counterclaim, appellee alleged that the filing of a false affidavit was a "deliberate, malicious and unconscionable act" by appellant, that invoking the court's jurisdiction to wrongfully garnish the funds was a fraud upon the court, and that appellee had suffered damage as a result of appellant's conduct. Appellee sought a judgment against appellant for at least $15,000 in compensatory and punitive damages, attorney fees, and costs.
 {¶ 6} On June 4, 2004, the court issued a notice that the case had been set for an initial status conference.
 {¶ 7} On June 21, 2004, appellee moved for summary judgment on "all or any part of" its answer and counterclaim. Appellee based its motion on the facts described in its answer and counterclaim, and attached the March 13, 1998 judgment against Debra Pargeon and appellant's March 9, 2004 affidavit. The motion asserted that appellant's actions "are at the very least a violation of Civ. R. 11" and perhaps a violation of the Code of Professional Responsibility. The motion repeated appellee's assertion that appellant's actions were deliberate and constituted an abuse of process.
 {¶ 8} On June 23, 2004, appellant filed a reply to appellee's counterclaim. Appellant essentially admitted to appellee's description of the proceedings and judgment in case No. 97CVG-37542. As an affirmative defense, appellant alleged that, in Neubauer v. Pargeon, case No. 96CVG-34616, appellant had been awarded a default judgment against Jeffrey Pargeon in the amount of $6,749.32, plus interest and costs. Appellant also alleged that a May 24, 2004 entry had corrected the dockets in the 2004 case against appellee and the 1997 case to reflect the proper filing of the pertinent non-wage garnishment arising from the judgment in the 1996 case.
 {¶ 9} On July 2, 2004, appellant moved to strike appellee's motion for summary judgment. Appellant argued that appellee's motion violated Civ.R. 56(A), which requires leave of court for filing a motion for summary judgment "[i]f the action has been set for pretrial or trial[.]" Appellant argued that the court's June 4, 2004 notice of initial status conference constituted a pre-trial order and, therefore, that leave of court was required.
 {¶ 10} On July 9, 2004, appellee filed a memorandum contra appellant's motion to strike. Appellee argued that the June 4, 2004 notice of initial status conference was not the equivalent of a pre-trial order and, therefore, that leave of court was not required for appellant to file his motion for summary judgment. Appellee also stated that appellant's reply to its counterclaim was untimely. Appellee reiterated the invalidity of appellant's attempted garnishment relating to case No. 97CVG-37542. Appellee also argued that appellant's action to transfer the garnishment from case No. 97CVG-37542 to case No. 96CVG-34616 was improper. Finally, appellee cited R.C. 2329.07, which states, in part: "If neither execution on a judgment * * * nor a certificate of judgment * * * is issued and filed * * * within five years from the date of the judgment or within five years from the date of the issuance of the last execution therefrom * * * the judgment shall be dormant[.]" Because the judgment against Jeffrey Pargeon in case No. 96CVG-34616 was dated July 21, 1998, and appellant did not take action to collect on that judgment until March 24, 2004, appellant's judgment against Pargeon was dormant as a matter of law. For all of these reasons, and citing Civ.R. 11, appellee sought summary judgment against appellant.
 {¶ 11} On July 20, 2004, the court denied appellant's motion to strike appellee's motion for summary judgment, and appellant thereafter filed a memorandum contra summary judgment. In its memorandum contra, appellant set out the history of the 1996 and 1997 actions. Appellant confirmed that he took a judgment against Jeffrey Pargeon and another party in the 1996 case and a similar judgment against Debra Pargeon in the 1997 case. "In March, 2004 [appellant] mistakenly filed a non-wage garnishment against Jeff Pargeon in the 1997 case." Thereafter, appellee's president informed appellant that it would not comply with the garnishment order because Jeffrey Pargeon no longer worked for the company and because Pargeon also owed money to appellee. After learning through appellee's answer and counterclaim that appellant did not have a judgment against Jeffrey Pargeon in the 1997 case, appellant filed a motion in both the 1996 case and the 1997 case to transfer the garnishment to the 1996 case. Appellant also asserted:
[Appellant's] filing of the non-wage garnishment against Mr. Pargeon in the 1997 case was a product of [appellant's] oversight, sloppiness, call it what one will, but not a product of his maliciousness. The filing of the garnishment motion and this action were neither deliberate nor unconscionable. Once the garnishment was filed, [appellant] felt duty-bound to have it recorded in a case where judgment had been rendered in his favor against Mr[.] Pargeon. At that point [appellant] could not change the fact that the last previous activity in the 1996 case was on July 21, 1998.
 {¶ 12} Appellant also asserted that appellee had not filed an affidavit demonstrating damages from the filing of the garnishment, but noted that appellee "might be entitled to a judgment for a token amount." Finally, appellant asserted that Civ.R. 11 did not bestow standing upon appellee to attack the validity of the garnishment order. Rather, appellee's only duty was to respond to the order.
 {¶ 13} Appellee filed a reply to appellant's memorandum contra summary judgment. Appellee cited to appellant's continued course of conduct, responded to appellant's arguments regarding Civ.R. 11, requested summary judgment against appellant, and requested a hearing on the issue of damages.
 {¶ 14} The court issued a decision granting summary judgment to appellee on January 20, 2005. In the decision, the court recounted the convoluted procedural history of the 1996 and 1997 eviction cases and appellant's April 2004 filing of a complaint against appellee. The question, the court stated, was whether there was a valid judgment against Jeffrey Pargeon at the time appellant filed the non-wage garnishment order. As to that question, the court concluded that judgment was rendered against Jeffrey Pargeon in the 1996 case on July 21, 1998. Because appellant did not pursue garnishment until March 2004, however, the judgment was dormant as a matter of law under R.C. 2329.07.
 {¶ 15} The court further concluded that appellant had revived the dormant claim against Jeffrey Pargeon, but that reviving the dormant claim did not revive any lien appellant may have had against Jeffrey's property or earnings. Therefore, finding no genuine issue of material fact as to appellant's complaint against appellee, the court granted summary judgment in favor of appellee.
 {¶ 16} As to appellee's counterclaim, the court concluded that appellee had not established the elements of abuse of process or fraud, and the court dismissed the counterclaim for failure to state a claim upon which relief could be granted. As to appellee's claim that appellant's actions constituted a violation of Civ.R. 11, the court set the matter for an evidentiary hearing "in order to provide [appellant] an opportunity to state the good faith basis upon which he filed the complaint."
 {¶ 17} Prior to the hearing, appellee filed an affidavit in support of its claim for attorney fees and a brief in support of sanctions. Appellee cited to both Civ.R. 11 and R.C. 2323.51 in support of sanctions.
 {¶ 18} At the hearing, appellee presented the testimony of Jay Eckhart, board chairman, treasurer, and record keeper for appellee. Eckhart testified that appellee is in the business of selling flooring. Appellee receives the flooring from manufacturers and distributors. Because these suppliers provide their products to appellee on credit, Eckhart stated, maintaining credit in "good standing" with their suppliers is "crucial" to appellee's business. (Tr. at 14.) Dunn Bradstreet reports credit-related information, including lawsuits filed against a business. One of appellee's suppliers called to inquire about this lawsuit, and four or five suppliers requested current financial information within 60 days of the lawsuit being filed. Eckhart also testified regarding the longstanding business relationship between appellee and appellee's counsel, who is Eckhart's brother, and counsel's typical billings. Appellee presented no other witnesses.
 {¶ 19} After appellee rested, appellant made the following statement to the court:
* * * I think the first thing I need to say, Your Honor, is that I owe a number of people in this case an apology as a result of the mistakes that I made in the handling of several items. First and foremost, I owe an apology to the Court for all the time it's had to spend on a case which was unnecessary if I had not made previous mistakes in the filing of the initial garnishment and perhaps the complaint in this case.
I owe [appellee] an apology because if I had realized that the garnishment that I had filed was unsupported by law at the time that I filed it, I would not have filed the complaint against [appellee] in this case.
(Tr. at 24.)
 {¶ 20} Appellant gave a detailed explanation of his actions in filing the 1996 and 1997 actions, and in taking action against appellee. During his statement, he also stated:
* * * I did make mistakes, but I do not believe that they fall in the type of misconduct that makes Rule 11 sanctions appropriate. I signed those documents. I understood what the documents said. To the best of my knowledge at the time I filed them, I believed them to be genuine and accurate documents.
(Tr. at 29.)
 {¶ 21} In his closing, appellant argued that appellee's counterclaim did not refer to Civ.R. 11 violations and did not include a request for sanctions. Appellant reiterated that he had made mistakes in the case, but had not violated Civ.R. 11. In his view, he took action to correct the mistake as quickly as possible after discovering it. The court asked appellant why he had not just dismissed the complaint against appellee. Appellant stated: "In retrospect, Your Honor, I should have." (Tr. at 46.)
 {¶ 22} The parties filed post-hearing briefs. In his brief in opposition to sanctions, appellant reiterated that dismissing the complaint would have been "the honorable thing to do[,]" but stated that he had been stunned by appellee's counterclaim for fraud and maliciousness.
* * * [Appellant] felt that [appellee's] aggressiveness was overbearing and that [appellee] might interpret the voluntary dismissal of the complaint as a sign of weakness. Although [appellant] did not dismiss his complaint, neither did he press his claims against [appellee] after the filing of the answer and counterclaim.
 {¶ 23} Appellant also stated the following:
[Appellant] is ashamed of his conduct in filing the underlying early 2004 garnishments against Mr. Pargeon and pursuing the complaint in this case. In nearly thirty years of practice, [appellant] has never screwed up so badly. [Appellant] is sorry that this Court has had to spend so much time on this matter because of his conduct. [Appellant] believes that [appellee's] pursuit of its counterclaim "gave" him nearly as good as he "gave" [appellee] by the pursuit of his complaint and prolonged this proceeding.
 {¶ 24} On April 28, 2005, the court issued an entry granting appellee's motion for sanctions and awarding appellee attorney fees in the amount of $3,005.50. Pursuant to Civ.R. 52, appellant filed a request for findings of fact and conclusions of law. Appellee filed proposed findings and conclusions; appellant did not.
 {¶ 25} Thereafter, the record reflects numerous and increasingly hostile filings by both parties, including: appellant's motion for ruling on appellee's counterclaim and appellee's memorandum contra; appellee's motion for, and court's order for, judgment debtor examination; appellant's motion for entry of satisfaction, appellee's memorandum contra, appellant's supplemental memorandum, and appellee's memorandum contra appellant's supplemental memorandum; appellant's motion for protective order and appellee's memorandum contra; appellee's notice of voluntary dismissal of its counterclaim; and appellee's motion to order payment of funds on deposit and to adopt proposed entry to terminate the pending case.
 {¶ 26} Finally, on August 5, 2005, the court issued an entry, which, among other rulings, adopted appellee's proposed findings of fact and conclusions of law and denied appellant's motion for a ruling on the counterclaim as moot because appellee had dismissed it. The court ordered appellant to cause the satisfaction of the certificate of judgment against appellant and to thereby release the lien on appellant's property by the clerk paying to appellee $3,005.50 (which, according to appellant, he had deposited with the clerk two months earlier) and appellant paying appellee's costs of $118. According to the parties, the clerk paid appellee the $3,005.50 deposited by appellant, but appellant has not paid to appellee the $118 in costs. Therefore, because $118 remains unpaid, the judgment remains unsatisfied.
 {¶ 27} Appellant timely appealed and raises the following assignments of error:
I. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION BY HOLDING AN EVIDENTIARY HEARING ON WHETHER OR NOT PLAINTIFF-APPELLANT HAD VIOLATED CIVIL RULE 11 WHEN NEITHER DEFENDANT NOR THE COURT HAD MADE A MOTION TO THIS EFFECT.
II. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION BY DENYING PLAINTIFF-APPELLANT DUE PROCESS OF LAW BY FAILING TO GIVE PLAINTIFF-APPELLANT ADEQUATE NOTICE OF THE SUBJECT MATTER OF THE ALLEGED WILLFUL VIOLATIONS OF CIVIL RULE 11 AND SHIFTING THE BURDEN OF PROOF TO THE NON-MOVING PARTY AT THE EVIDENTIARY HEARING ON WHETHER OR NOT PLAINTIFFA-PPELLANT HAD VIOLATED CIVIL RULE 11 WHEN NEITHER DEFENDANT NOR THE COURT HAD MADE A MOTION TO THIS EFFECT.
III. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION BY GRANTING SANCTIONS AGAINST PLAINTIFF-APPELLANT PURSUANT TO CIVIL RULE 11 BY ADOPTING WITHOUT CHANGE THE FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY DEFENDANT-APPELLEE WHICH FAILED TO STATE THAT PLAINTIFF-APPELLANT WILLFULLY VIOLATED CIVIL RULE 11.
IV. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION BY SUBJECTING PLAINTIFF-APPELLANT TO INAPPROPRIATE ACTION (I.E. REQUIRING PLAINTIFF-APPELLANT TO PAY FOR EXPENSES AND ATTORNEY FEES INCURRED BY DEFENDANT-APPELLEE IN THE PROSECUTION OF ITS COUNTER-CLAIM WHICH WAS DISMISSED BY THE COURT AND/OR BY DEFENDANT-APPELLEE PRIOR TO TRIAL[)].
 {¶ 28} Civ.R. 11 requires an attorney or a pro se litigant to sign every pleading, motion or other document. The rule further provides:
* * * The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. * * *
(Emphasis added.)
 {¶ 29} In adjudicating a motion for sanctions under Civ.R. 11, a trial court must consider whether the individual signing the document: (1) has read the pleading; (2) has good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for purposes of delay. Ceol v.Zion Indus., Inc. (1992), 81 Ohio App.3d 286, 290. If the trial court determines that the filing did not meet one or more of these requirements, then the court must determine whether the violation was willful. Civ.R. 11 expressly requires that the conduct must be willful; mere negligence is insufficient. Kozarv. Bio-Medical Applications of Ohio, Inc., Summit App. No. 21949, 2004-Ohio-4963; Kane v. Kane, Franklin App. No. 02AP-933, 2003-Ohio-4021; Crockett v. Crockett, Franklin App. No. 02AP-482, 2003-Ohio-585. In short, Civ.R. 11 authorizes an award of fees against an attorney or party for his or her willful actions with respect to pleadings, motions, and other documents, and it imposes a subjective standard for reviewing those actions. See Ceol (comparing Civ.R. 11 to Fed.R.Civ.P. 11).
 {¶ 30} In contrast, R.C. 2323.51 applies more broadly to "conduct," and it imposes an objective standard for reviewing that conduct. R.C. 2323.51 provides, in part:
(A) As used in this section:
(1) "Conduct" means * * *:
(a) The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action;
* * *
(2) "Frivolous conduct" means * * *:
(a) Conduct of [a] * * * party to a civil action, * * * or other party's counsel of record that satisfies any of the following:
(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
* * *
(B)(1) * * * [A]t any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.
 {¶ 31} A decision to impose sanctions, pursuant to Civ.R. 11, lies within the discretion of the trial court and will not be reversed on appeal, absent an abuse of that discretion. State exrel. Fant v. Sykes (1987), 29 Ohio St.3d 65. Similarly, an appellate court will not reverse a trial court's award of sanctions under R.C. 2323.51 absent an abuse of discretion.Crockett. This court has stated, however, that sanctions under R.C. 2323.51 can present a mixed question of law and fact on appeal. Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51-52.
 {¶ 32} In his first assignment of error, appellant asserts that neither appellee nor the court moved for sanctions under Civ.R. 11. In his second assignment of error, appellant asserts that he did not have adequate notice of the subject matter of the February 4, 2005 hearing and, in that hearing, the court shifted the burden of proof to him. We address these two assignments of error together.
 {¶ 33} We acknowledge that the record in this case does not include a document styled "Motion for Sanctions." From the very beginning, however, appellee sought a judgment against appellant for damages, attorney fees, and costs, as reflected in appellee's counterclaim. Appellee first raised Civ.R. 11 expressly in its motion for summary judgment, which asserted that appellant's actions "are at the very least a violation of Civ.R. 11[.]" Appellee again cited to Civ.R. 11 in its memorandum contra appellant's motion to strike. Appellant specifically responded to the substance of appellee's claims in his memorandum contra appellee's motion for summary judgment, and appellant also expressly cited to Civ.R. 11.
 {¶ 34} The trial court's January 20, 2005 decision likewise cites to appellee's "requested relief under Civ.R. 11" and "sets this matter for an evidentiary hearing in order to provide [appellant] an opportunity to state the good faith basis upon which he filed the complaint." Prior to the hearing, appellee filed an affidavit containing the amount of fees incurred and a brief in support of sanctions. Appellee's brief argued in support of an award under Civ.R. 11, R.C. 2323.51, and numerous court decisions, and it identified six questions appellee wanted appellant to answer. Finally, throughout the February 4, 2005 hearing, the court repeatedly referred to appellant's "motion" for sanctions or to appellee as the "movant," and appellee represented to the court that it was the "moving" party.
 {¶ 35} Here, appellant alleges that neither the court nor appellee "moved" for sanctions under Civ.R. 11 and, even if we were to find that there was a motion, that "the ambiguity of such motion's notice was inadequate to provide Appellant with a meaningful opportunity to defend against the allegations leveled against him." Appellant does not cite any case in support of either of these assignments. And, other than a cursory statement that the court shifted the burden of proof to him, appellant does not address these arguments in the context of due process.
 {¶ 36} Appellant raised no objection to the hearing or the notice of hearing at any time. Appellant did not seek clarification of the basis for the hearing, nor did appellant object to the scheduling of the hearing without the filing of a "motion." Having failed to raise these issues to the trial court, appellant has waived his right to raise them on appeal. State exrel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, 278
("[a] party who fails to raise an argument in the court below waives his or her right to raise it" on appeal); Hollon v.Hollon (1996), 117 Ohio App.3d 344, 347 (alleged error for failure to provide notice of hearing on attorney fee award not preserved for appeal where appellant did not expressly object before trial court).
 {¶ 37} Appellant appears to be arguing that he did not have notice sufficient to advise him that he might be sanctioned for his non-willful conduct under R.C. 2323.51, as opposed to his being sanctioned for his willful filings under Civ.R. 11. We find, however, that the lack of a reference to R.C. 2323.51 in the court's hearing notice did not render that notice insufficient. See Hollon at 348-349 (absent objection, trial court had statutory authority to award sanctions under R.C.2323.51 even though motion for sanctions and court's judgment cited only to Civ.R. 11).
 {¶ 38} Here, appellant had notice that appellee sought sanctions under both Civ.R. 11 and R.C. 2323.51, and for appellant's course of conduct throughout the proceeding, not just his filing of the affidavit and/or complaint. Appellant had ample opportunity — before, during, and after the hearing — to respond to appellee's claims, and he did so at length. Although the court referred only to Civ.R. 11 at the hearing, the court stated that appellant's action went beyond unintentional false filings, and that "the whole issue that I, in all candor, am deciding in this case is bad faith — is frivolous conduct, false statements and bad faith." (Tr. at 49-50.) Appellant could have filed proposed findings of fact and conclusions of law, or he could have objected to appellee's proposed conclusions, which went beyond Civ.R. 11. Instead, appellant again chose to remain silent. Because appellant had notice that an award under Civ.R. 11 and R.C. 2323.51 was at issue, and because he failed to object or propose a limitation, he has no grounds to raise those issues here. For these reasons, we overrule appellant's first and second assignments of error.
 {¶ 39} In his third assignment of error, appellant asserts that the court erred by adopting, without change, appellee's proposed findings of fact and conclusions of law, which did not include a finding that appellant committed a willful violation of Civ.R. 11. Appellant cites no authority in support of his assertion that the court erred by adopting appellee's proposed findings and conclusions without change. As appellee notes, appellant moved the court to make findings of fact and conclusions of law. While appellee filed proposed findings, appellant did not file proposed findings nor did appellant object in any way to appellee's proposed findings. The court's adoption of the only proposed findings of fact and conclusions of law before it, without more, does not demonstrate an abuse of discretion. We now turn to appellant's assertion that the court failed to find that appellant willfully violated Civ.R. 11.
 {¶ 40} Here, appellant's argument focuses on his filing of the complaint against appellee and the court's reliance on Civ.R. 11. However, the court's decision is broader in terms of both the conduct it encompasses and the legal basis it rests upon.
 {¶ 41} As to appellant's conduct, Finding of Fact No. 3 concerns appellant's filing of the affidavit in support of a garnishment order without a valid judgment; Finding of Fact No. 4 concerns appellant's filing of the complaint against appellee; Finding of Fact No. 6 concerns appellant's action to transfer the garnishment; Finding of Fact No. 14 concerns appellant's failure to dismiss the complaint after learning that the judgment was invalid; and Finding of Fact No. 15 concerns appellant's "numerous other efforts to justify his conduct, as shown on the docket of this case[.]"
 {¶ 42} As to the court's legal basis, Conclusion of Law No. 1 cites and quotes Civ.R. 11; Conclusion of Law No. 2 cites and quotes R.C. 2323.51; Conclusion of Law No. 3 cites Civ.R. 11 and states that appellant did not have good ground to support the filing of the affidavit in support of the garnishment order; Conclusion of Law No. 4 cites Civ.R. 11 and states that appellant did not have good ground to support the filing of the complaint against appellee; Conclusion of Law No. 5 cites Civ.R. 11 and states that appellant did not have good ground to support his "continued attempts to support the original false and/or defective garnishment, as demonstrated by" the court's docket; and Conclusion of Law No. 6 states:
The court further concludes that the plaintiff/defendant has violated Civ.R. 11, as set out above, and has further violated the provisions of R.C. 2323.51 as to "frivolous conduct" and as to filing the suit against this defendant "* * * to harass or maliciously injure another [party] to the civil action or appeal.["]
 {¶ 43} Based on our review of the court's decision, we agree with appellant that the court did not make an express finding that appellant willfully violated Civ.R. 11. By appellant's own admissions, his filing of the affidavit in support of garnishment and his filing of the complaint against appellee resulted from sloppiness, not intentional misrepresentation. The trial court did not expressly find otherwise.
 {¶ 44} We further find, however, that the court's imposition of sanctions under R.C. 2323.51 was more than adequately justified in this case. First, a "counsel's failure to adequately investigate a claim can constitute frivolous conduct under the statute." Lewis v. Celina Fin. Corp. (1995),101 Ohio App.3d 464, 473, citing Stephens v. Crestview Cadillac, Inc. (1989),64 Ohio App.3d 129, 132-133. Appellant's investigation of his claim against appellee was obviously inadequate.
 {¶ 45} Second, even after appellant was informed that he had filed the garnishment in the wrong case and that the judgment against Jeffrey Pargeon was dormant, he did not dismiss the complaint. Appellant repeatedly expressed remorse to the court and clearly stated that, in retrospect, he should have dismissed the complaint. He also stated, however, that he maintained the lawsuit because he thought appellee's actions were overbearing and that dismissal could have been interpreted as weakness on his part. Most telling is appellant's statement that he "believes that [appellee's] pursuit of its counterclaim `gave' him nearly as good as he `gave' [appellee] by the pursuit of his complaint and prolonged this proceeding." These facts support the court's finding that appellant refused to dismiss a groundless complaint in order to harass or maliciously injure appellee.
 {¶ 46} For these reasons, we conclude that the trial court did not abuse its discretion in determining that appellant engaged in frivolous conduct under R.C. 2323.51. Thus, any failure by the court to find a willful violation under Civ.R. 11 was inconsequential, as R.C. 2323.51 independently supported the court's award. Therefore, we overrule appellant's third assignment of error.
 {¶ 47} In his final assignment of error, appellant asserts that, even if there were a willful violation of Civ.R. 11, that rule only authorizes a sanction of payment for costs associated with appellant's filings. Therefore, in appellant's view, the court should not have awarded sanctions for payment of attorney fees associated with appellee's counterclaim. Appellant cites no case authority for this assertion.
 {¶ 48} As we have already determined that the court did not make an express finding of a willful violation under Civ.R. 11, we need not look to Civ.R. 11 for authority as to the amount of the sanction. Instead, we look to R.C. 2323.51.
 {¶ 49} R.C. 2323.51(B)(1) allows any party adversely affected by frivolous conduct to move for "award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal[.]" R.C.2323.51(B)(3)(b) further provides that the amount of an award representing reasonable attorney fees in a matter not involving a contingent fee agreement "shall not exceed, and may be equal to or less than, * * * the attorney's fees that were reasonably incurred by a party."
 {¶ 50} R.C. 2323.51 does not limit an award of fees to those incurred as a result of appellant's filings only. Rather, it allows a motion for an award in the amount of costs, attorney fees, and expenses "incurred in connection with the civil action[.]" Appellee's counsel submitted an affidavit containing an itemized statement of the attorney fees incurred by appellee in connection with the action. The court conducted a hearing, and appellee presented testimony from one witness concerning the importance of an aggressive defense to the complaint. Based on the evidence before it, the court did not abuse its discretion by awarding an amount equal to appellee's fees and court costs. Therefore, we overrule appellant's fourth assignment of error.
 {¶ 51} For these reasons, we overrule appellant's first, second, third, and fourth assignments of error, and we affirm the decision of the Franklin County Municipal Court. In addition, we sua sponte strike from the record the "Supplemental Appellant's Exhibit" appellant submitted to this court.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.