OPINION
{¶ 1} This appeal is brought by an attorney, Zach Zunshine, who sued his former client for non-payment of fees. The client counterclaimed for legal malpractice. The client later dismissed the malpractice claim, and the trial court awarded damages to Zunshine for the unpaid fees. Zunshine appealed that decision to this court, arguing that the trial court should have also awarded him prejudgment interest. We agreed, and remanded the case on that issue alone.
 {¶ 2} Almost a year later and in the same matter, Zunshine filed a motion for sanctions against the client and her new attorney, alleging that the malpractice *Page 2 
counterclaim was frivolous. The trial court determined that the claim was not frivolous, and denied the motion for sanctions. Zunshine filed this appeal. Under Ohio law, sanctions will only be awarded for willful violations of Civ. R. 11. There is no evidence showing that the new defense counsel or the client willfully violated Civ. R. 11 in filing the counterclaim. We therefore affirm the decision of the trial court.
 {¶ 3} Defendant-appellee, Helen I. Cott, was injured in an automobile accident. Cott hired Zunshine to represent her in personal injury claims against two defendants — the other driver/driver's insurance company, and Cott's own insurance company. Cott v. Martin (June 6, 2005), Franklin Cty. C.P. No. 04CVC-05-5055. Cott signed a contingency fee agreement for that representation, providing that Zunshine would collect one-third of the proceeds of both claims.
 {¶ 4} The claim against the other driver/insurance company went to trial, and, on June 2, 2005, a Franklin County jury awarded Cott $38,440. The second — a bad faith claim against Cott's own insurance company — was stayed, and later voluntarily dismissed at Cott's request. Zunshine was angered by Cott's request to dismiss the second claim because it closed the door on the possibility that he would be paid for the work he had done on that claim. Zunshine notified Cott that dismissing the second claim was a breach of the contingency fee agreement, and included an invoice for $8,500 in quantum meruit fees for the second claim. Zunshine also advised Cott that she should seek the advice of another attorney regarding her rights and liabilities under the breached fee agreement. She hired Gerald Sunbury as her attorney.
 {¶ 5} Attorneys Sunbury and Zunshine began negotiating Zunshine's fee for Cott's representation in the personal injury matter. Zunshine wanted one-third of the jury *Page 3 
verdict, plus out-of-pocket litigation costs, as well as payment for the abandoned bad faith claim. Sunbury agreed to pay the first two items in full, in exchange for Zunshine's agreement to drop the quantum meruit claim. Zunshine refused to negotiate and, instead, filed a complaint to recover all of the fees. Zunshine v. Cott (July 8, 2005), Franklin Cty. C.P. No. 05CVH-07-7374.
 {¶ 6} On August 11, 2005, Sunbury filed an answer to the complaint, and two counterclaims — the first for declaratory judgment, and the second for professional negligence. During discovery, Sunbury identified two attorneys who had allegedly agreed to give expert testimony regarding the malpractice claim. Zunshine contends that he contacted both of the attorneys Sunbury named as expert witnesses, and that neither stated that they had agreed to testify as Sunbury proffered.
 {¶ 7} Zunshine moved for summary judgment on the counterclaim. Sunbury asked for an extension of time to respond, but never actually responded. Nearly four months later, attorney Sunbury dismissed the malpractice counterclaim without prejudice.
 {¶ 8} On May 10, 2006, attorney Zunshine filed a motion for judgment in the amount of $11,532 (30 percent of $38,440), plus prejudgment interest, which the trial court granted. Then, one month later, Zunshine asked the court to reopen the case because he was entitled to one-third of the $38,440 (rather than just 30 percent). The trial court reopened the case, and scheduled a final pre-trial conference for July 19, 2006.
 {¶ 9} At the conference, Cott did not oppose attorney Zunshine's contention that he was entitled to one-third, and the trial court granted judgment accordingly. The court also determined, at that time, that prejudgment interest was not warranted, and that both sides should bear the costs of litigation, rather than taxing all costs to Cott. Zunshine *Page 4 
appealed that judgment on August 28, 2006, and this court reversed and remanded the case, holding that Zunshine was entitled to prejudgment interest as a matter of law. See Zunshine v. Cott (Mar. 29, 2007), Franklin App. No. 06AP-868, 2007-Ohio-1475, at ¶ 28 (affirming in part and reversing in part).
 {¶ 10} On July 5, 2007 — more than three months after this court remanded the case to the trial court for further proceedings related only to the prejudgment interest issue — attorney Zunshine filed his motion for sanctions. The issue of sanctions had not been raised previously.
 {¶ 11} Zunshine asserted he is entitled to sanctions because Sunbury/Cott never had a cognizable claim against him for legal malpractice, as evidenced by the fact that the two key witnesses Sunbury identified had not actually agreed to testify. The trial court disagreed, and denied the motion for sanctions. Zunshine then filed a new notice of appeal, assigning one error for our consideration:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN THE TRIAL COURT REFUSED TO IMPOSE RULE 11 SANCTIONS ON DEFENSE COUNSEL, MR. SUNBURY, FOR FILING A BOGUS MALPRACTICE COUNTERCLAIM.
 {¶ 12} The decision to impose (or not to impose) sanctions is for the trial court, and we will not reverse such a decision absent an abuse of discretion. State ex rel. Fant v. Sykes (1987), 29 Ohio St.3d 65,505 N.E.2d 966 (per curiam). An abuse of discretion is more than just an error in law or judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 5 
 {¶ 13} The general rule in Ohio is that parties to civil litigation must pay their own attorneys' fees, unless otherwise provided by statute, or unless the prevailing party can demonstrate that the other party acted in bad faith. State ex rel. Crockett v. Robinson (1981),67 Ohio St.2d 363, 369, 423 N.E.2d 1099; Ceol v. Zion Indus., Inc. (1992),81 Ohio App.3d 286, 289, 610 N.E.2d 1076. Bad faith usually refers to the filing of a frivolous complaint, in which case the party forced to defend the frivolous claim may seek attorney fees under Civ. R. 11 or R.C. 2323.51. See Neubauer v. Ohio Remcon, Inc., Franklin App. No. 05AP-946, 2006-Ohio-1481, at ¶ 30, 38 (distinguishing Civ. R. 11 sanctions from the statutory sanctions provided by R.C. 2323.51). The trial court may also grant relief sua sponte. In addition to compensating those who are aggrieved, the possibility that a party acting in bad faith may have to pay the other side's legal fees is intended to deter vexatious litigation.
 {¶ 14} Civ. R. 11 requires attorneys (or pro se litigants) to sign every motion, pleading, or other document filed in a civil action. This signature serves as a certificate that the attorney or party filing the document: (1) has read the document; (2) that everything contained in it is true to the best of the individual's knowledge; (3) that there is good ground to support it; and (4) that its purpose was not to delay.[1] The court may strike any document that is either unsigned, or determined to be filed with intent to defeat the purpose of Civ. R. 11. On the adverse party's subsequent motion, or on the court's own initiative, willful violations of Civ. R. 11 may be grounds for sanctions against the offending party, or counsel. See, e.g., Estep v.Kasparian (1992), 79 Ohio App.3d 313, 317, *Page 6 607 N.E.2d 109 (holding that where frivolous conduct was attributed to counsel, sanctions should be levied against counsel rather than the client).
 {¶ 15} Only willful violations of Civ. R. 11 warrant sanctions. Id.; cf. Crockett v. Crockett, Franklin App. No. 02AP-482, 2003-Ohio-585, at ¶ 18 (noting that willfulness is not required for sanctions under R.C. 2323.51). Mere negligence is not enough to trigger sanctions. Riston v.Butler, 149 Ohio App.3d 390, 2002-Ohio-2308, at ¶ 9, 777 N.E.2d 857; Accord Neubauer, supra, at ¶ 29 (citing Kozar v. Bio-Med. Applicationsof Ohio, Inc., Summit App. No. 21949, 2004-Ohio-4963, at ¶ 11; Kane v.Kane, Franklin App. No. 02AP-933, 2003-Ohio-4021, at ¶ 17;Crockett, supra).
 {¶ 16} The trial court denied Zunshine's motion for sanctions on procedural grounds, and also on a perceived lack of merit. At the July 19, 2006 final pretrial conference on the fee case, the parties were required by local rule to submit an itemized list of special damages. The trial court noted that Zunshine did not request sanctions in his list of itemized damages, and found that, based on the local rule requiring itemization of damages, Zunshine was procedurally barred from moving for sanctions after the fact. (Entry Denying Rule 11 Sanctions, July 11, 2007, at 3.) We find sanctions are distinct from damages, and therefore do not fall within the purview of the local rule requiring itemization of damages.
 {¶ 17} A more compelling procedural bar to attorney Zunshine's motion is the fact that he waited until after the case was terminated, appealed, and then remanded — nearly a year — to make his motion. No facts that give rise to Zunshine's motion accrued after July 2006. Therefore, no legitimate reason for waiting until July 2007 to file the motion for sanctions was present. *Page 7 
 {¶ 18} Although the trial court incorrectly concluded that Zunshine's motion for sanctions was procedurally barred for failing to include sanctions as damages, the trial court's reasoning follows basic principles of estoppel — you cannot litigate or re-litigate an argument in the future, when you had or could have had an opportunity to raise that argument in a previous matter. See, generally, Bentley v. GrangeMut. Cas. Ins. Co. (1997), 119 Ohio App.3d 93, 100, 694 N.E.2d 526
(explaining the doctrines of collateral estoppel and res judicata).
 {¶ 19} Collateral estoppel (a/k/a issue preclusion) prevents parties from re-litigating facts or issues in a subsequent suit that were fully litigated in a prior suit. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Id. (citingThompson v. Wing [1994], 70 Ohio St.3d 176, 183, 637 N.E.2d 917).
 {¶ 20} The doctrine of res judicata, which encompasses both claim preclusion and issue preclusion, promotes finality of judgments, and bars parties in privity from re-litigating facts or issues that they either litigated previously, "or had an opportunity to litigate * * * in a former action in a court of competent jurisdiction." Postal TelegraphCable Co. v. City of Newport, Ky. (1918), 247 U.S. 464, 476,38 S.Ct. 566. This doctrine is, of course, balanced with fundamental due process, which guarantees parties a meaningful opportunity to be heard. See id; see, also, Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 116,254 N.E.2d 10. "The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. * * * And as a state may not, *Page 8 
consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard * * * so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." PostalTelegraph, Ibid.
 {¶ 21} There are no due process concerns here. Zunshine had many opportunities to file his motion for sanctions. Likewise, there are no privity concerns here. The parties are the same. Civ. R. 11 does not provide a specific time within which a motion for sanctions may be filed. The statutory counterpart to Civ. R. 11, however, states that a motion for sanctions may be filed "at any time not more than thirty days after the entry of final judgment in a civil action or appeal." R.C. 2323.51(B)(1). We believe a similar time limit should be inferred for Civ. R. 11 sanctions.
 {¶ 22} Turning to the merits of Zunshine's motion for sanctions, the trial court
reviewed various correspondence exchanged between attorneys Sunbury and Zunshine from June through August 2005, and did not find any "ill-will or bad faith by either Mr. Zunshine's former client Ms. Cott or her successor counsel Mr. Sunbury." The court found that Sunbury's actions were prudently calculated to secure his own client's interest in the portion of the insurance payment that was rightfully hers. (Entry Denying Rule 11 Sanctions Motion, at 5.) With regard to the filing of the malpractice counterclaim, the trial court found that:
 * * * There were genuine disputes that could have risen to being legitimate claims of legal malpractice against Mr. Zunshine. They were compulsory counterclaims. Mr. Sunbury would have waived them had they not been asserted. While medical professionals enjoy extra procedural protection due to *Page 9 
the required "affidavit of merit" necessary to support a medical malpractice complaint under Civ. R. 10(D)(2), no such hurdle exists in legal malpractice cases. Practically speaking, an attorney can plead a legal malpractice claim before all the facts are fully and completely developed, and can rely on what his or her client says about the facts having in mind, as mentioned, that there is a procedural pitfall if compulsory counterclaims are not asserted to protect the record.
Id. at 6.
 {¶ 23} The trial court, thus, determined that the counterclaim was not frivolous per se. In addition, there is no evidence to demonstrate willfulness, or that attorney Sunbury filed the malpractice counterclaim with malicious intent. Sanctions are therefore unwarranted.
 {¶ 24} We understand Zunshine invested hours of his time in a legal matter that his client opted to dismiss, and, because he took the case on a contingency basis, he was not paid for those efforts. However, there are some injuries for which the law does not provide a remedy. We cannot craft a remedy for a claim that has none especially by awarding sanctions to the aggrieved party. That is not the purpose of Civ. R. 11.
 {¶ 25} In sum, we cannot find any evidence that the trial court abused its discretion in denying attorney Zunshine's motion for sanctions. For these reasons, we overrule the sole assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and SADLER, JJ., concur.
[1] CIV.R. 11. We note that the Ohio Rules of Civil Procedure do not impose a "safe harbor" provision as does Rule 11 of the federal rules. Cf. Fed.R.CIV.P. 11. *Page 1